CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED

6/8/2018

JULIA C. DUDLEY, CLERK
BY: S/J.Vasquez
       DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| TIMOTHY WAYNE SMITH,<br>    Plaintiff, | )<br>)<br>)  Civil Action No. 5:17-cv-70374 |
| v. | )<br>)<br>)  By: Elizabeth K. Dillon |
| JAMES WHITLEY, *et al.*,<br>    Defendants. | )      United States District Judge<br>) |

**MEMORANDUM OPINION**

*Pro se* plaintiff Timothy Wayne Smith originally filed this action in the Circuit Court of Frederick County, Virginia, while he was confined at the Northwestern Regional Adult Detention Center (NRADC). On August 9, 2017, the case was removed to this court. Pending before the court are two motions: (1) defendants' motion for summary judgment (Dkt. No. 14); and (2) Smith's "Motion for Temporary Injunction and Temporary Restraining Order." (Dkt. No. 29.) The court took Smith's motion under advisement and ordered the defendants to respond. (Dkt. No. 31.) Defendants have now responded (Dkt. No. 32), and both motions are fully briefed and ripe for disposition. For the reasons discussed more fully herein, the court denies Smith's motion and grants defendants' motion.

I. BACKGROUND

Smith's claims arise from his detention at NRADC in 2017 and challenge the conditions of his confinement there. He asserts claims against the Northwestern Regional Jail Authority (NRJA) and NRADC's superintendent, James F. Whitley.

Specifically, his complaint claims that, when he first arrived and was in what was referred to as "Phase I" housing, he was forced to sleep on the floor next to a toilet and that the toilet would emit fluid when flushed. He alleges that the spray from the toilet water landed on

him, his clothing, and his bedding. He also claims that when his cellmate used the toilet, the toilet splashed urine and water onto his sheets, mattress, and blanket, and the floor. He describes that the mattress is in a "plastic boat" on the floor of the cell, and that both rest against the toilet. (Compl. 1–2, Dkt. No. 1-2.)

He also contends that due to the placement of the boat and mattress, "there is no space to walk or move about the cell," which he describes as a "hazard." (Compl. 3.) He appears to believe this is a fire hazard. (*Id.* at 4 (referencing the "state fire marshall[sic]").)

He asserts that all of these conditions were unsanitary and unsafe, that they caused him to get sick. He also alleges that he suffers from Obsessive Compulsive Disorder (OCD)—including "a phobia of germs"—and other mental illnesses. (*Id.* at 2.) According to him, the staff at NRADC are aware of his health conditions and were deliberately indifferent to his needs. (*Id.*)

In their motion for summary judgment, defendants have provided affidavits from Whitley and from Sheila Miller, who is a registered nurse. As already noted, Smith's complaint concerns the conditions of his confinement while in "Phase I." In his affidavit, Whitley explains that there are three phases of incarceration at NRADC. (Whitley Aff. ¶ 3, Dkt. No. 15-1.) The system is designed to reinforce and reward positive inmate behavior, participation in training and counseling, and good work performance. (*Id.*) Phase I is a "highly restricted environment with limited privileges," and during his time in Phase I, an inmate undergoes formal classification and is required to participate in orientation and instruction regarding the rules and regulations of the facility. Phase I will last no more than 15 days, absent an exception by the Captain of Security, and an inmate is permitted to transition to general population when he has shown his readiness to comply with facility rules and regulations.

Whitley's affidavit also describes, and provides a picture of, a typical cell in Unit 2A, which is where Whitley was assigned during the period in question (October 31, 2016, to November 14, 2016.) He avers that the cells are designed for two persons. According to Whitley, Smith was assigned an actual bed, not the floor, during that period. Additionally, Whitley attaches a daily inspection log from that time period, which showed that there were no reports of unsanitary conditions, and also maintenance logs, which showed no reports of a problem with the toilet in Smith's cells, nor any maintenance needed on them. Whitley also points out that inmates are required to keep their own cells clean, and are given supplies to do so.

Ms. Miller is the head nurse at NRADC. Her affidavit reflects that Smith never complained of or received treatment for exposure to urine or toilet water while housed in Phase I in October and November of 2016. (*See generally* Miller Aff., Dkt. No. 15-4; *see also* Whitley Aff. ¶ 8.) Smith reported to the medical facility three times during November 2016. (Miller Aff. ¶¶ 2–4.) The first time was November 5, 2016, when he complained of "sore throat, congested ears, runny nose and head ache and dandruff and itchy scalp." (*Id.* ¶ 2.) He was administered the cold protocol and given dandruff shampoo. (*Id.*) Two weeks later (after he had been moved from Phase I), he returned with complaints of continued sinus and ear congestion and dry skin. (*Id.* ¶ 3.) He was continued on the cold protocol. (*Id.*) On November 25, 2016, he returned with complaints of right ear pain and popping. (*Id.* ¶ 4.) He was given various medicines at that time. (*Id.*) Ms. Miller also avers that she has she "reviewed Smith's entire medical chart," and no medical doctor ever opined that his cold symptoms or ear infection in November of 2016 were caused by exposure to urine or toilet water. (*Id.* ¶ 5.)

Smith has filed a response which is not signed under penalty of perjury. Even if treated as an affidavit for purposes of the summary judgment motion, almost the entirety of his response

is conclusory and does not state specific facts disputing the evidence defendants have put forth. For example, he generally asserts that the motion contains "so many inaccuracies and blatant falsehoods" that "it borders on the preposterous." (Pl.'s Resp. to Defs.' Mot. Summ. J. 1, Dkt. No. 30.) But—for the most part—he does not identify which of the statements are falsehoods, nor offer any contradictory evidence. He argues instead that he can show that many of the statements are false either through the testimony of unidentified trial witnesses or through the court's own investigatory visit to NRADC to view the conditions "up close and personal." (*Id.* at 2–3.) Likewise, he claims in general terms that he is "harassed and discriminated and intimidated inside of this facility," but he provides no detail as to these claims, which were not in his original complaint.

There is some evidence that he offers, in the form of his own statements, as to a few facts. The court will construe all of these facts and the entire record in the light most favorable to him when analyzing his claim, as it must. *See Laing v. Fed. Express Corp.*, 703 F.3d 713, 714 (4th Cir. 2013). First, and contrary to Whitley's testimony that Smith was assigned an actual bed, Smith states that he was placed in a boat on the floor next to a toilet when housed in Phase I. Second, he argues that Whitley's testimony about "studies" showing that persons are less likely to commit suicide with a cellmate present are not identified or unsupported. He claims that there have been "more" suicides and attempted suicides since the implementation of the Phase I housing at NRADC. Third, he asserts that the cells in Phase I were always intended to be single occupancy and it was not until the 2000s that bunks were added to make them "double

occupancy."[1] Fourth, he claims that any "maintenance" records should clearly show that there were numerous toilets that sprayed water—even as far as several feet out from the toilet.[2]

## II.  DISCUSSION

### A.  Smith's Motion for Temporary Injunction and Temporary Restraining Order

After defendants filed their summary judgment motion, the court ordered Smith to respond. He filed a response to the motion and, at the same time, a motion titled as a "Motion for Temporary Injunction and Temporary Restraining Order." (Dkt. No. 29.) In it, he claimed that he needed an injunction to protect him from both other persons incarcerated at the jail and correctional officers, because a local newspaper article about this case also mentioned that Smith had "worked with the commonwealths attorney office against a female correctional officer." (Dkt. No. 29 at 2.) As a result, he claimed he was being called a rat and a snitch, and he was concerned for his physical safety. He did not offer any additional details concerning any concrete or specific threat, nor did he identify any particular individual who he believes needs to be enjoined. The court ordered defendants to respond, and the defendants did so, including an affidavit from defendant Whitley. (Dkt. No. 32.)

Subsequent to filing this motion, however, Smith has been released from custody on bond (Dkt. No. 36), which moots his motion.[3] To the extent the motion is somehow not moot, the court would deny the motion.

---

[1] It is unclear from his response what he believes the significance of this fact is, other than to show that inmates sometimes sleep on mattresses in boats on the floor. He makes perfectly clear that "jail overcrowding" is not his claim. (Pl.'s Resp. 6.)

[2] He also claims that the affidavit from Nurse Miller, the medical records custodian, is "pure speculation," because he never met her. (*Id.* at 5.) But he offers no specific facts contradicting the medical evidence she has presented and summarized.

[3] Smith filed a previous document, also seeking preliminary injunctive relief, while the case was pending in state court in which he alleged that personnel at NRADC were harassing him. That motion was denied as moot because Smith had been released from custody shortly after the case was removed to this court. (*See* Dkt. No. 20

First of all, the motion was for an interlocutory injunction, but the harm complained of did not arise from the harm alleged in the complaint, which is a conditions-of-confinement claim. Thus, interlocutory relief would not have been appropriate. *Omega World Travel v. TWA*, 111 F.3d 14, 16 (4th Cir. 1997) ("[A] preliminary injunction may never issue to prevent an injury or harm which not even the moving party contends was caused by the wrong claimed in the underlying action."). Instead, a party seeking interlocutory relief must establish a relationship between the injury claimed in the motion and the conduct giving rise to the complaint. *Id.*; *see In re Microsoft Antitrust Litig.*, 333 F.3d 517, 526 (4th Cir. 2003). Second, his vague allegations did not suffice to establish the four factors required for an injunction to issue. *Cf. Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 365, 375–76 (2008). Third and finally, to the extent that Smith was attempting to raise a retaliation claim based on the filing of his complaint, the court would have denied the motion without prejudice to his ability to file a retaliation claim in a separate lawsuit, after first exhausting administrative remedies. In any event, in light of his release, the court will deny the motion as moot.

**B. Motion for Summary Judgment**

1. Standard of Review

Under Rule 56, summary judgment is proper where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists only where the record, taken as a whole, could lead a reasonable jury to return a verdict in favor of the non-moving party. *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009). In making that determination, the court must take "the evidence and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party."

---

(denying Dkt. No. 19).) Smith was subsequently re-arrested and was housed again in NRADC. He has since been released again.

*Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (en banc) (quoting *Ausherman v. Bank of Am. Corp.*, 352 F.3d 896, 899 (4th Cir. 2003)).

A party opposing summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (citations omitted). Moreover, "[t]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment . . . ." *Id.* at 247–48. Instead, the non-moving party must produce "significantly probative" evidence from which a reasonable jury could return a verdict in his favor. *Abcor Corp. v. AM Int'l, Inc.*, 916 F.2d 924, 930 (4th Cir. 1990) (quoting *Anderson*, 477 U.S. at 249–50).

2. Conditions-of-Confinement Claim

In their motion for summary judgment, defendants present competent summary judgment evidence, by way of affidavits, that contradicts many of the allegations in Smith's complaint. As already noted, Smith provides a few facts in his opposition to counter the affidavits. But even construing the evidence in the light most favorable to Smith, there is not sufficient evidence from which a reasonable jury could return a verdict in his favor. *Id.* If a jury were to believe the facts set forth by Smith, then he was required to sleep on the floor next to a toilet, and the toilet would spray fluid when flushed. He endured these conditions while housed in Phase I for approximately two weeks. These conditions, no doubt uncomfortable, do not give rise to a constitutional violation.

For pretrial detainees, the court evaluates a claim challenging confinement conditions under the Due Process Clause of the Fourteenth Amendment, rather than under the Eighth Amendment's prohibition on cruel and unusual punishment. *Bell v. Wolfish*, 441 U.S. 520, 535

n.16 (1979). Despite this, courts routinely utilize Eighth Amendment standards to analyze conditions-of-confinement claims brought by pretrial detainees.

Under that analysis, Smith must satisfy two prongs to prevail. First, the conditions, either alone or in combination, must constitute a serious deprivation of a basic human need, *Strickler v. Waters*, 989 F.2d 1375, 1379 (4th Cir. 1993), and the deprivation must result in a serious significant physical or emotional injury to Smith, *see id.* at 1380–81. To determine whether a deprivation is sufficiently serious so as to satisfy this prong, the court evaluates the conditions in light of contemporary standards of decency, keeping in mind that the Eighth Amendment "does not mandate comfortable prisons" but only prohibits "extreme deprivations." *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995).

Second, Smith must show that the defendants (or one of them) have exhibited "deliberate indifference" to the serious condition or to a substantial risk of harm to him. *Id.* Although this second prong has often been described as the "subjective prong," at least some courts have held, after *Kingsley v. Hendrickson*, 135 S. Ct. 2466 (2015), that the test is an objective one.[4]

In those cases where *Kingsley* has been applied, courts have explained that the second prong of a conditions-of-confinement claim requires "the pretrial detainee [to] prove that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant knew, or should have known, that the condition posed an excessive risk to

---

[4] In *Kingsley*, the Supreme Court resolved a circuit split and held that "the appropriate standard for a pretrial detainee's excessive force claim is solely an objective one," not a subjective one. 135 S. Ct. at 2473. That holding's applicability to deliberate-indifference claims and to conditions-of-confinement claims has been addressed by some courts of appeals, with differing results. *See, e.g.*, *Adams v. New Hanover Cty. Det. Ctr.*, No. 5:16-cv-3020, 2017 WL 7513347, at *2 n.1 (E.D.N.C. June 30, 2017) (collecting authority and noting that at least two circuits have applied it to conditions-of-confinement claims, one has declined to and instead continues to apply a subjective standard, and some have refused to address the issue or, like the Fourth Circuit, have not reached it), *aff'd*, 703 F. App'x 202 (4th Cir. Nov. 21, 2017) (unpublished per curiam).

health or safety." *Darnell v. Pineiro*, 849 F.3d 17, 35 (2d Cir. 2017) (describing the second prong after determining that *Kingsley* applies to conditions-of-confinement claims).

To date, it does not appear that the Fourth Circuit has addressed the issue of *Kingsley's* applicability to conditions-of-confinement claims. *See Adams v. New Hanover Cty. De. Ctr.*, No. 5:16-cv-3020, 2017 WL 7513347, at *2 n.1. The lack of guidance here is immaterial, though, because it is unnecessary to reach the issue in this case. Instead, the court concludes that Smith's claim fails for want of evidence on the first prong. *See Hipp v. Cannon*, No. 0:18-cv-548, 2018 WL 2276154, at *3 n.1 (D.S.C. Apr. 3 2018) (Report & Recommendation of U.S. Magistrate Judge), *adopted by* 2018 WL 2267991 (D.S.C. May 16, 2018) (concluding that the court need not reach the issue because it "can be addressed without consideration of the subjective prong generally applied to Eighth Amendment claims"). The first prong has always been objective and was left unaltered by *Kingsley*.

As to the first prong, no reasonable fact-finder could conclude, based on the evidence in the record, that the conditions described by Smith were a "serious deprivation" of a basic human need or that Smith suffered a significant physical or emotional injury. Numerous courts have considered similar claims and have concluded that they do not constitute a serious deprivation of a constitutional magnitude. *See, e.g.*, *Robinson v. Weisenburger*, Civil Action No. 7:14-cv-114, 2015 WL 5023745, at *6 (W.D. Va. Aug. 25, 2015) (adopting report and recommendation and finding no constitutional violation where inmate claimed he was forced to sleep on the floor, was rarely let out of the cell block, and where the shower drain flooded and was not fashioned to prevent insects and vermin from entering the jail); *Gray v. V.B.C.C. Inmate Hous.*, No. 1:14-cv-414, 2014 WL 3420483, at *1 & n.3 (E.D. Va. July 9, 2014) (dismissing claim where inmate was housed with two other inmates in a cell designed for two persons, had to sleep on "a cold concrete floor" next to the toilet, exposing him to urine and fecal matter, and where inadequate sanitation resulted in moldy

9

showers and infestations of insects and rodents); *Pickett v. Thompson*, No. 9:09-cv-2986, 2010 WL 3786569, at *1, *3 (D.S.C. Sep. 21, 2010) (finding no violation where the medical records reflected no resulting injury to a pretrial detainee who alleged that he had to sleep on an uncushioned mattress on the floor near a toilet, and other inmates splashed urine on his mattress); *Gallimore v. McPeak*, No. 7:07-cv-573, 2008 WL 112041, at *2 (W.D. Va. Jan. 9, 2008) (finding no violation where inmate complained of overcrowding that resulted in one inmate having to sleep on the "dirty concrete floor" "less than 2 feet from [the] toilet," because he was not personally injured and did not show a substantial risk that he would be); *Haven v. Parent Co. of New River Reg'l Jail*, No. 7:07-cv-345, 2007 WL 2156247, at *10 (W.D. Va. July 24, 2007) (finding no violation where plaintiff, who had not sustained a serious or significant injury, asserted he had to sleep on a mattress "directly on the concrete floor . . . dangerously close to and below the toilet," and that spray likely got on his bed, exposing him to disease); *Mathias v. Simpkins*, No. 7:07-cv-31, 2007 WL 1577336, at *3 (W.D. Va. May 31, 2007) (finding no constitutional violation where inmate claimed that because of overcrowding, many inmates were required to sleep on a "cold floor," sometimes next to a toilet, but he personally suffered no injury).

This case is factually similar to the cases above, and the court reaches the same conclusion as those courts. Although Smith alleges that the toilet in his cell sprayed fluid when flushed and urine got on him and his bedding, that alone does not rise to the level of a constitutional violation. It does not pose a risk of harm that is so serious as to violate standards of decency. Additionally, although Smith has argued, as did many plaintiffs in the above cases, that he became sick as a result of the conditions, there is no evidence that Smith ever sought any medical treatment for any condition caused by his cell's conditions. Indeed, there is no evidence that he ever complained to the medical unit about the unsanitary conditions or claimed an illness that seems possibly related to the conditions. Furthermore, even if Smith believes the illnesses

he suffered as described by Nurse Miller—a cold and an ear infection—were caused by the spraying toilets, he has not presented any credible *evidence* of that. There is simply nothing in the record from which a fact-finder could conclude he suffered a significant physical or emotional injury caused by a spraying toilet or sleeping next to one. This lack of any serious harm or substantial risk of future harm resulting from the challenged conditions is fatal to his claim.

In short, while being housed in Phase I housing and having to sleep in the boat close to the toilet may have been uncomfortable and less clean and sanitary than Smith would prefer, he has not alleged anything to suggest that the conditions violated contemporary standards of decency or that he suffered the type of injury or risk of injury to state a claim under the Fourteenth Amendment. Accordingly, the court will grant defendants' motion for summary judgment.[5]

### III. CONCLUSION

For the foregoing reasons, the court will deny as moot Smith's motion for temporary injunction and temporary restraining order (Dkt. No. 29), and it will grant defendants' motion for summary judgment (Dkt. No. 14.) An appropriate order will be entered.

Entered: June 8, 2018.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
United States District Judge

---

[5] Defendants offer several other grounds on which they are entitled to summary judgment. First, they argue that Whitley should be dismissed because he had no personal involvement in the facts as alleged by Smith. (Defs.' Mem. Supp. Mot. Summ. J. 5–6.) Second, they contend that defendants are entitled to qualified immunity. (*Id.* at 9–10.) Third, they argue that NRJA is not a "person" amenable to suit under § 1983. (*Id.* at 10–12.) Because the court dismisses Smith's claims on their merits, it is unnecessary to address these additional arguments.

11